IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID SIPP, Reverend,

        Plaintiff,

vs.                                             CIVIL NO.  01-1418 LFG/DJS-ACE

UNUM PROVIDENT
CORPORATION and
PAUL REVERE LIFE
INSURANCE,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING ATTORNEY FEES

THIS MATTER is before the Court on Plaintiff Reverend David Sipp's ("Sipp") Motion for Attorney Fees [Doc. 58] and Plaintiff Attorney Time Statement [Doc. 59]. The Court carefully considered Sipp's application as well as Defendants' Response [Doc. 64] and Sipp's reply [Doc. 66]. The Court finds that Sipp's motion should be granted in part and denied in part.

### Background

Sipp filed suit in a New Mexico State court on November 20, 2001, alleging breach of a disability insurance contract, unfair insurance practices in violation of certain unspecified statutory and regulatory provisions, negligent misrepresentation, and a claim for punitive damages. The case was removed to federal court.

In early June 2002, Sipp sought to amend his complaint, seeking to add causes of action under the New Mexico Unfair Insurance Practices Act, the Unfair Practices Act, bad faith, and repudiation of the insurance contract. The deadline to amend the pleadings had expired long before Sipp filed

his motion to amend discovery nearly complete.  Thus, the Court concluded that Defendants would be prejudiced by an amendment at this late date [Doc. 32], and, the case proceeded on the claims originally set forth in Sipp's complaint.

On September 20, 2002, the Court issued its Memorandum Opinion and Order on the parties' cross-motions for partial summary judgment.  The Court concluded as a matter of law that Sipp established his entitlement to disability benefits under the contract and therefore granted Sipp's motion for partial summary judgment [Doc. 47, p. 10].  In rejecting one of Sipp's common law claims for misrepresentation, the Court stated:

> Sipp contends that Defendants "misrepresented" the reasons for denial or discontinuation of benefits, in that they stated he was suffering from mere "stressful life events" rather than an illness.  The Court has concluded, as discussed above, that Defendants were clearly wrong in coming to this conclusion and that a jury could not find otherwise.  However, Defendants' conclusion is not a "misrepresentation," but rather is one party's opinion, reached after some analysis (however faulty) of the circumstances.  Plaintiff has a different opinion, which the Court shares, but that does not render Defendants' statement of the reasons for a denial a "misrepresentation" in the sense of being untrue or recklessly made.

The Court ultimately dismissed all of Sipp's common law claims as well as his demand for punitive damages, but found that he was entitled to his contract disability benefits, and that no reasonable jury could have found to the contrary.  As a result, the Court entered an award of disability benefits in favor of Sipp from the time his benefits were terminated until the present, as well as future disability benefits to the extent authorized by Sipp's contract of insurance with UNUM.

### Sipp's Entitlement to Attorney's Fees

Sipp now requests an award of attorney fees pursuant to NMSA 1978 § 39-2-1.  This statute provides:

> In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorneys' fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.

In construing this statute, the New Mexico Supreme Court stated:

> The purpose of this provision is to encourage insurers to pay out injury or damage claims promptly without placing on their insureds the unreasonable burden of having to bring a lawsuit to collect what they are entitled to under the policy in order to make themselves whole. However, the provision is not aimed at holding out the threat of an award of attorney fees any time an insurer challenges any issue. The statute is simply designed to encourage insurers to resolve any doubt in favor of the insured and to pay off the claim quickly in order to make the insured whole after a loss. Section 39-2-1 accomplishes this goal by punishing an insurer's unwarranted recalcitrance in paying a claim by awarding attorneys' fees to the insured for his or her efforts in collecting benefits.

Amica Mut. Ins. Co. v. Maloney, 120 N.M. 523, 531, 903 P.2d 834 (1995).

Such is the case here. Sipp was the insured. In order to secure payment of his disability benefits, he was forced to file suit to collect what he was entitled to collect under the policy so as to make himself whole. The Court already determined that Sipp was entitled, as a matter of contract and law, to the receipt of disability benefits under his policy of insurance. The rationale offered by Defendant that Sipp was suffering from "stressful life events" rather than an illness was deemed "clearly wrong" by the Court. (Doc. 47, p. 31). Moreover, the Court specifically determined that a jury could not find otherwise. (Id.). Under these circumstances, the Court finds that Sipp is entitled to attorney fees pursuant to § 39-2-1.

The Court rejects Defendants' argument that the Court should deny attorney fees because a request was not specifically pled under the statute and is, therefore, untimely. Moreover, Defendants

3

also argue that a breach of contract alone does not substantiate an award of fees as a matter of law. Under the facts of this case, the Court disagrees.

In Shaeffer v. Kelton, a breach of contract case, the New Mexico Supreme Court reasoned that "[i]n New Mexico, damage awards should fully compensate the injured party, whether the action is one in contract or in tort. One who fails to justly perform his contract is justly responsible for all of the damages flowing naturally from the breach." Shaeffer, 95 N.M. 182, 187, 619 P.2d 1226, 1230 (1980) (internal citation omitted). New Mexico's damage philosophy, as espoused by the Supreme Court in Shaeffer, when read with Justice Stanley Frost's opinion in Amica Mut. Ins. is clear. Unless attorney fees were awarded plaintiff, he would face a most unreasonable burden of having brought a lawsuit to collect what he was entitled to receive under the policy. Thus, allowing only an award of disability benefits without the costs incurred to achieve that award would result in plaintiff not being made whole.

Therefore, the Court rejects Defendants' argument and determines that an award of reasonable fees is appropriate under § 39-2-1.

### **General Approach to Determination of Attorney Fee Award**

On November 21, 2002, Sipp filed his motion for attorney fees and submitted an attorney time statement which indicated that he spent 360.2 hours in this litigation. Sipp seeks an award of attorney fees based on the rate of $180.00 per hour, for a total of $64,836.00.

The starting point for determining the amount of an appropriate attorney fee is to calculate the number of hours reasonably expended and to multiple that number by a reasonable hourly rate. Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), *abrogated on other grounds* by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S. Ct. 3078 (1987). The

resulting figure is referred to as the "loadstar." Case v. Unified School Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998).

It is incumbent upon Sipp, as the party requesting fees, to demonstrate the amount of time spent on specific tasks and to show that the time expended was indeed reasonable. Id. at 1249-50. In other words, Sipp must "prove and establish [the] reasonableness of each dollar, each hour, above zero." Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995). The Tenth Circuit clearly stated that attorneys who seek attorney fees,

> Must keep meticulous, contemporaneous time records to present to the court upon request. These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours wee allotted to specific tasks--for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint and so on.

Ramos, 713 F.2d at 553. The district court can reduce the number of hours requested when the time records provided to the court are inadequate. Case, 157 F.3d at 1250. Indeed, the court "must reduce the actual number of hours expended to a reasonable number to ensure services an attorney would not properly bill to his or her client are not billed to the adverse party." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1234 (10th Cir. 2000) (*relying* on Case.)

The Tenth Circuit has furthered explained that "block billing" or lumping multiple tasks into one single time entry, while not *per se* forbidden, is not favored. Cadena v. Pacesetter, Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). This practice makes it difficult, if not impossible, for a court to determine if reasonable recompense is sought. When tasks are billed as a block, the Court is unable to assess whether reasonable time was spent on any of the specific categories within the block and whether the hours claimed were excessive, redundant, or unnecessary. Moreover, attorneys typically

5

do not bill a client for every hour expended in litigation, and attorneys are required to exercise billing judgment regarding the amount of time actually billed. Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1202 (10th Cir. 1998). Thus, when considering attorney fee requests, a court has an obligation to exclude from the calculation of hours submitted those hours that were "not reasonably expended" in pursuing the litigation. Id.

In determining whether hours are reasonably expended on specific tasks, the Court may consider whether the tasks being billed are normally billed to a paying client, the complexity of the case, the number of hours spent on each task, the number of reasonable strategies pursued, potential duplication of services by multiple attorneys, and the responses necessitated by the maneuvering of the other side. Case, 157 F.3d at 1249; Ramos, 713 F.2d at 553. The Court may then accept the "loadstar" proposed by the movant as the reasonable amount to award or may adjust the loadstar, depending upon the circumstances. Louisiana Power & Light v. Kellstrom Co., 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 516 U.S. 862 (1995). Similarly, the Court may elect to discount the requested fees by making a general reduction of hours so as "to achieve what the court determines to be a reasonable number." Case, 157 F.3d at 1250. However, the record must not reveal that the trial court merely "eyeballed" the fee request and reduced it arbitrarily. Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).

## Analysis

### I. Sipp's Attorney's Time Statement and Defendants' Lack of Opposition

Sipp's attorney submitted his time statement showing the date a service was provided, a brief description of the service rendered and the total amount of time spent [Doc. 59]. Numerous time

entries in Sipp's time statement do not contain sufficient detail for the Court to carefully evaluate the time expended or the nature or the need for the service, as discussed *infra*.

Defendants' opposition to Sipp's application was similarly of little assistance. While Defendants challenge Sipp's right to seek attorney fees in the first place, they make no challenge to the particular items charged. Thus, the specifics of Sipp's fee request remain unchallenged. For that matter, Defendants do not challenge the total number of hours spent, nor do they challenge Sipp's loadstar figure, but, instead, focus their opposition on Sipp's right to receive any attorney fees whatsoever.

While the Court recognizes that unchallenged assertions as to fees should not be disregarded, Cunningham v. City of McKeesport, 753 F.2d 262, 266-67 (3d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015 (1986), *and reinstated*, 807 F.2d 49 (3d Cir. 1986), the inquiry cannot end there. As the burden of justifying fees falls on the party seeking them, Case, 157 F.3d 1249-50, the determination of the amount and reasonableness of the attorney fee award remains the Court's responsibility. F.D.I.C. v. Aroneck, 643 F.2d 164, 166 (4th Cir. 1981). Indeed, "there is no question that a district court may rely on its general experience as well as it closer familiarity with a case to evaluate the parties' arguments on a fees issue" even when portions of the fee request are unchallenged. Robinson,[1] 160 F.3d at 1285-86. Accordingly, the Court itself is obliged to independently assess the

---

[1] In Robinson, the Tenth Circuit reversed the trial court decision "to depart significantly from the unchallenged portion of the plaintiffs' fee request," and its across-the-board cut of 45 percent in claimed hours spent. 160 F.3d at 1286. However, Robinson is distinguishable because the Tenth Circuit disagreed with the trial court's justifications for the cut, including its finding that the case was "fairly simple and straightforward." The appellate court noted that there had been three separate motions for summary judgment and a motion to dismiss, amici briefs from two separate interest groups, and extensive discovery battles. The trial took two days, and after the initial trial, there were three separate applications for attorneys fees. "It was a case in which thoughtful jurists strongly disagreed" with respect to central legal issues under the Establishment Clause – "an area notorious for its difficult case law. . . ." Id. at 1282. Here, Sipp's successful contract claim and his shotgun approach to the litigation cannot be compared to the level of complexity raised by the claims in Robinson.

reasonableness of the attorney fees claimed. Taylor v. Gaither, 2001 WL 435873 at *4 (S.D. Ala.), *aff'd by,* 273 F.3d 1116 (11th Cir. 2001).

The Tenth Circuit's discussion of an attorney fee request in Mallinson-Montague v. Pocrnick, 224 F.3d 1224, 1234 (10th Cir. 2000), provides guidance on this issue. In Pocrnick, the plaintiff prevailed on a Title VII claim at trial and moved for attorney's fees. The defendant claimed that fees should be denied altogether because of the plaintiff's attorney's inadequate time records. Id. at 1233. It is unclear if the defendant in Pocrnick challenged specific entries, but on appeal, the defendant did not challenge any of the particulars of the district court's order reducing the fees it granted. Instead, the defendant, similar to Defendants here, challenged the court's decision to award any fees at all. Id. at 1235.

In Pocrnick, the district court indicated that it had the discretion to deny the fee request altogether based on the attorney's inadequate documentation, including that the plaintiff's counsel kept only rough notes of time expended, lumped some of the billing entries, provided clearly excessive entries for research time, and generally made it impossible for the court to identify and eliminate duplication in the time records. Id. at 1234. However, the trial court elected not to deny the entire fee request because the plaintiffs prevailed on a serious charge and the plaintiffs should not be punished for their counsel's failure to do his part. However, the fee request was reduced drastically due to the "lumping of tasks into large blocks of time, with its concomitant lack of specificity and possibility of overlap with the work of other attorneys, and the failure to maintain the time records contemporaneously with the work performed." Id. at 1235.

The question before the Tenth Circuit was whether the district court abused its discretion in finding that it could arrive at a reasonable, *albeit* dramatically reduced, fee in view of the inadequate

8

documentation presented. The Tenth Circuit affirmed the award of fees, noting that the trial court specifically delineated the categories of fee requests where it was difficult to evaluate the propriety of time spent. "In light of the district court's superior perspective in determining the reasonableness of the number of hours expended, this court cannot conclude that the district court's tailored pruning of lead counsel's claimed hours was manifestly unreasonable or abusive." Id. at 1235.

## II.     Reasonable Hourly Rate

The setting of a reasonable hourly rate is within a trial court's discretion. In determining an hourly rate,

> the court should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees.

Ramos, 713 F.2d at 555. The reasonable hourly rate should comport with the rates "prevailing in the community for similar services for lawyers of reasonably competent skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11, 104 S. Ct. 1541 (1984).

In this case, Sipp's counsel requests a billing rate of $180.00 per hour. Sipp's attorney submitted no affidavit or information concerning his background, education, skill or experience. Most importantly, he did not submit evidence of prior attorney fee awards that may have established a benchmark billing rate for him.

A review of the Court's own electronic docket, however, shows that Sipp's counsel has appeared in at least 136 federal cases since 1986. Again, the Court's records demonstrate that Mr. Burke was first licensed to practice in federal courts on April 22, 1980, and may well have been

9

licensed in state courts prior to that date. Based on the records relating only to his federal practice, Mr. Burke has a minimum of 23 years' experience, and, therefore, an hourly rate of between $150.00 and $180.00 is certainly not out of line for attorneys with similar experience.

Finally, the Court notes that Defendants have not challenged Mr. Burke's requested hourly rate of $180.00. Therefore, the Court will approve the $180.00 hourly rate sought. As that hourly rate comports with the rates "prevailing in the community for similarly services for lawyers of reasonably competent skill, experience and reputation." Blum, 465 U.S. 886.

### III.     Reasonableness of Time and Billing Entries

#### A.     *Vague Billing Entries:*

Many of Sipp's billing entries are vague with tasks lumped together in single entries. For example, the entry on 5-22, "Copy and mail expert reports, Motion to strike mitigation, research damages, and draft amended complaint" is billed for a total of 6.0 hours. The Court cannot determine what portions of time were spent on particular tasks, and this is problematic when some of the tasks should not properly be billed. For example, the portion of the time concerning Sipp's efforts to amend the complaint should not be permitted, as the Court denied the amended complaint.

Other equally vague entries include the 5-7 "Notes to file" for .5 hour, and 7-16 "copy and mail dep exhibits to o/c" for 2.5 hours. Other entries disclose that unreasonable amounts of time were billed. For example, 7-8 entry states "Confer with client, draft settlement letter," for 4.0 hours. Yet, on 7-27, an additional 4.0 hours was spent to "Finalize settlement letter." It would appear unreasonable to spend 4 hours drafting the letter and then an additional 4 hours in reviewing and finalizing it.

There are other billing entries that are similarly bothersome. With respect to legal research performed, one must provide enough information to determine whether the research was related to successful issues and reasonably necessary to the case. *See* Case, 157 F.3d at 1252-53. Sipp's counsel's time sheets include numerous references to research. For example, on 11-19 "Research Other Revere cases in library" (1.0 hour); 3-4 "Law library to look up other cases and Erisa regs" (1.0 hour); 3-5 "Continue previous day research" (1.0 hour); 4-4 "Library research prospective disability, meet clt" (3.0 hours); 5-30 "Research and draft amend[ed] complaint tc o/c" (3.0 hours); 6-24 "Edit, research, begin final draft of SJ" (6.0 hours); and 8-9 "Research motion to recon" (.6 hours). Without specific information, it is difficult to determine whether the present fee application includes all the hours of time spent in pursuit of untimely amendments or requests to reconsider the Court's decision, or if some time has already been withdrawn. Failed claims should not be billed.

### B.     *Excessive or Unreasonable Billing Entries:*

Several examples of the Court's concerns should suffice. The entry for 11-28 shows that Sipp's counsel billed three hours "to file complaint and jury demand in Taos." As Sipp's counsel's office is in Santa Fe, one would presume that the filing would be done by mail, and, therefore, three hours for filing the complaint is unreasonable. However, if Sipp's counsel drove from Santa Fe to Taos to file the complaint and then returned to his Santa Fe office, it would explain the three-hour time period, which then would be reasonable. But it would not explain why Sipp's counsel is billing for driving time at the same rate he bills for professional services. This is the kind of clerical or ministerial task that could have been performed by a paralegal, legal assistant or office runner whose fees would be substantially less than that charged by Sipp's counsel. Defendants should not have to pay attorney fee rates for clerical duties.

Senior Judge Campos, in <u>Edwards v. Microsoft Corp.</u>, CIV No. 99-1476 SC/DJS (D.N.M. Aug. 31, 2000), ruled:

> Mr. Arshwasky billed for the tasks not required to be performed by him at an attorney fee rate . . . .
>
> Mr. Arshwasky explains that he to travel to Santa Fe to obtain the Court's opinion . . . .  However, this is not a task that should be performed by an attorney at an attorney's rate.  The opinion could have been faxed--or Mr. Arshwasky could have billed this activity in an amount equivalent to what a messenger would have charged.

So, too, the entry for 2-20, is a 3.5 hour charge for "RF file in federal clerk's office, Albuquerque, review other."  This entry appears to be a file review of pleadings contained in the Court's file.  It is unclear why counsel would require 3.5 hours to review pleadings, which, on the date of review, would have contained only the pleadings which he himself filed and for which he already billed.  Moreover, as the situation with the filing of the complaint, the 3.5 hour charge could include driving time from Santa Fe to Albuquerque and return.  If that is the case, however, again, Sipp's counsel should not bill his driving time at the same rate he bills for professional services.

On 2-25, Sipp's counsel billed 3.4 hours for drafting interrogatories and calling his client's spouse.  The next entry indicates that those interrogatories were finalized and served on 2-27. However, on 4-2, Sipp's counsel again bills four hours to "Review interrogs.  Prepare file for Dr. Rappaport and deliver."  Block billing makes it difficult to interpret this entry.  Is this time spent to review the interrogatories previously drafted and served? Alternatively, if Sipp's counsel is reviewing responses to interrogatories, the amount of time is reasonable.  However, this billing is unclear, especially since a subsequent 4-3 entry specifically bills times for "Review interrogs answers."

12

Entries on 4-18, 4-22, 4-29 and 4-30 are all deposition preparation times. The amount of time billed for this service is 24.5 hours. This time may be perfectly reasonable if Sipp's counsel is preparing for multiple depositions. However, without clarification, 24.5 hours of preparation for a single deposition may be unusual.

### C.     *Clerical Time Billed as Attorney Time*

The entry on 5-22 is for 6 hours. However, some portion of that time relates to basic clerical functions that should be included in office overhead, or at least should not be billed at the rate of an attorney's professional services. This entry states "Copy and mail expert reports." This is a task that would generally be performed by the law firm's clerical or paralegal staff or assumed in the office's overhead and not separately billed. In any event, Sipp's attorney is not entitled to reimbursement at an attorney's hourly rate for performing clerical tasks of this nature. "Ramos instructs that courts should evaluate whether the services are normally part of office overhead. If so, they should be disallowed." EEOC v. MTS Corp., CIV 94-1473 LH/WWD (D.N.M. Mar. 26, 1998) (*citing* Ramos v. Lamm, 713 F.2d at 555). Significant portions of the 5-22 entry may relate to Sipp's attempts to amend the complaint. See also, for example, entries on 5-30, 5-31 and 6-6. The Court did not allow the amendment. Thus, the time and effort spent by Sipp's counsel in pursuing an out-of-time amendment should not properly be billed.

### D.     *Travel Time:*

Many entries on the attorney fee statement involve travel time. On 5-1, Sipp's counsel billed 13.5 hours for travel and prep time for a trip to Boston. So, too, the 3-hour entry on 11-28 probably includes two hours of travel time, and a 3.5 hour entry on 2-20 probably includes 2 hours of travel time. The entry on 3-1, which includes " Meet clients, plan litigation in Penasco" is billed for 5 hours.

13

At least two hours of that time would have been spent traveling to Penasco and returning. Further, the entry on 5-1 is for 13.5 hours of travel time; the entry on 5-6 is for 7.0 hours of travel time; the entry on 7-18 is for 8 hours of travel time; and on 7-20, another 7.0 hours of travel time.

The Court does not dispute that travel is reasonable and necessary, and a litigant is entitled to reimbursement. The question is whether the travel time should be billed at the attorney's standard billing rate for legal services or at a reduced rate. Several judges in this district have declined to authorize fees for travel time at the attorney's standard hourly rate.

In EEOC v. MTS Corp., Judge C. LeRoy Hansen deducted attorney travel time billed at the attorney's standard rate from the fee request. So, too, Senior Judge E.L. Mechem in Sena v. Gillespie, CIV 86-831 (D.N.M. Dec. 22, 1994), authorized reimbursement of travel time at a rate of $75.00, when the attorney's standard hourly rate was $110.00.

The Court recognizes that the Tenth Circuit authorizes billing time at an attorney's rate if it is the kind of charge that is routinely passed on to clients. Ramos, 713 F.2d at 553. However, Sipp's attorney provides no justification for the billing other than the fact that the time was spent. For example, had an affidavit been submitted which indicated what counsel's standard office policy is, and whether counsel was precluded from engaging in other fee-generating work as a result of the time spent traveling, the Court could authorize reimbursement of travel time. But here, no support or information is provided so as to allow the Court to determine the reasonableness of this practice.

In this case, the Court determines that Sipp's attorney's travel time should not be billed at the same rate of his professional services time, and in line with Judge Mechem's decision in Gillespie, the Court will reduce the fee request.

14

### *E.     Degree of Success:*

A court may adjust the requested fees based on a plaintiff's overall success.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . . In these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . . If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount.

Hensley v. Eckerhart, 461 U.S. 424, 435-36, 103 S. Ct. 1933, 1940-41 (1983)(internal cites omitted). Hensley cautions that when making adjustments for "excellent results" or "limited success," "the court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." Id. at 437. The court should properly consider the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation. *See also* Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1230 (10th Cir. 2001)(employing the factors outlined by Justice O'Connor's concurrence in Farrar v. Hobby, 506 U.S. 103, 116-22, 113 S. Ct. 566 (1992), in determining reasonableness of a fee award and noting appropriateness of considering the relief requested and the relief obtained by way of litigation).

In this case, Sipp prevailed only on his contract claim. The Court determined that he was entitled to disability benefits and that Defendants were wrong to deny those benefits based on their belief that Sipp's problems were caused by life's stressors rather than illness. Clearly, Sipp prevailed in that he recovered an award of disability benefits. However, Sipp's theory included a shotgun approach to litigation. In addition to his claimed breach of contract, he alleged unfair insurance practices, negligent misrepresentation and violation of unnamed statutes and regulations. He later sought to amend his complaint to add more claims although his request was denied.

15

At the summary judgment stage, Sipp was successful on his contract claim, but failed to prevail on each and every other claim and proposed claim he advanced. This case was a relatively straight-forward lawsuit that resulted in the grant of individual relief. It is certainly not a landmark case nor is it likely to affect any other individual.

Sipp's complaint requested compensatory and punitive damages, but the Court ultimately dismissed the punitive damage request and declined to allow the amended complaint to state claims for violations of state regulatory statutes. While Sipp indeed recovered the disability benefits previously denied him, the Court is compelled to characterize the result as partial relief and not "full or extraordinary." The "'degree of the plaintiff's success' does not affect 'eligibility for a fee award,' "but it is 'the most critical factor' in determining the reasonableness of a fee award." Sinajini v. Board of Education of the San Juan County School District, 53 Fed. Appx. 31, 36 (TABLE, Text in Westlaw), 2002 WL 31781131 at *3 (10th Cir. Dec. 13, 2002) (internal citations omitted). Here, the limited success attained by Sipp justifies a reduction in the requested fees.

## Conclusion

When viewed in terms of Sipp's substantial demands and request for punitive damages, the Court concludes that while Sipp was successful in recovering contractual damages, his success was only partial, and, therefore, full fees are not warranted. Moreover, due to the imprecise and vague billing entries, the failure to provide sufficient information to allow the Court to accurately determine the reasonableness of the time spent and the services performed, the billing of attorney time for clerical functions and the billing of travel time at attorney fee rates, the Court determines that a 20% reduction in hours is appropriate, and that 288.16 hours of time were reasonably spent in obtaining relief in this lawsuit.

IT IS THEREFORE ORDERED that Sipp's counsel should be reimbursed at the rate of $180.00 per hour, for a total fee award of $51,868.80, plus applicable gross receipts tax.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge